The next case this morning is 2011-12-68, BAXTER HEALTH v. FRESENIUS MEDICAL. Now, Attendance Council has divided up the time, so Ms. Tuohy, you've got two minutes at the outset. Is that correct? Yes. May it please the Court, I'm Maureen Tuohy, representing appellant DECA, the patentee in this matter. With me this morning is co-counsel David Callahan, representing BAXTER, the exclusive licensee. In the interest of efficiency, I'm going to generally defer to Mr. Callahan for purposes of today's argument. But I did want to address one issue of unique importance to my client. Fresenius repeatedly refers to the testimony of Dean Kamen, DECA's founder and inventor of the patented suit, who's here with us today. Mr. Kamen asked me to clarify what he said and did not say so that his testimony can't be used to contravene the clear meaning of the two claim limitations at issue and the undisputed operation of the Fresenius-accused device, which I'd like to briefly do. First, Fresenius argues in his brief that Mr. Kamen himself characterizes his invention as a constant pressure pump at Fresenius's brief at 44. Fresenius's citation to the record, A14150, relates to the operation of the Baxter prior art gravity cycler device. It doesn't relate to Mr. Kamen's invention. It doesn't relate to the 823 patent. And it doesn't relate to the commercial embodiment of the home choice device. The term constant pressure pump is not found anywhere in the claims or the specification of the 823 patent. Secondly, Fresenius argues in his brief that Dr. Santiago agreed with Mr. Kamen's earlier testimony about the technical meaning of selecting a gravity flow condition, noting that the 823 patent inventor very clearly showed the equivalent between a certain head height and a certain pressure at Fresenius's brief at 42. Fresenius's citation, A15248, is not to Mr. Kamen's testimony. It's actually Fresenius's expert's purported characterization of Mr. Kamen's testimony. And he did not say that. In fact, Mr. Kamen's testimony made it clear that he selected a range of pressures to emulate a selected gravity flow condition. And I refer the court to A14159 and A14176. While there are other examples, in short, Mr. Kamen's testimony cannot and should not be used to support the jury verdict in this case. I thank you, your honors. With the court's leave, I'll turn it over to Mr. Callahan. Thank you. Good morning, your honors. May it please the court. Claim one of the 823 patent that is at issue in this case is straightforward, elegant invention. It says we can move peritoneal dialysis into and out of a patient using fluid pressure. And we can use air pressure to move the fluid in or an order is a very important word there. We can use fluid pressure to move it out. In the same way that there is no dispute that Fresenius' accused device uses a piston to push on the membrane and move fluid into the patient's peritoneum. There is no dispute in the record. And there is no substantial evidence to contradict the fact that Fresenius' accused product uses fluid pressure, or vacuum, to pull on the membrane and draw peritoneal fluid out of the patient's peritoneum. Let me move you before your time runs out. I understand your argument with respect to that claim construction issue. I have a few more questions on the other issue, which is the selective gravity. Yes, your honor. It was hard for me to follow what the back and forth in the brief. The court never construed the term selective gravity. That's correct, your honor. And you make a representation in Gray, there's back and forth, that the other side submitted a claim construction, which would have gone to the fact that you need a constant point and a range is prohibited. That's correct, your honor. In Gray, it was rejected and withdrawn. I guess I wanted to know what happened. If it was withdrawn, is it the case that the judge never made a claim construction ruling on that term, and therefore it was up for grabs in terms of the parties dealing with it before the jury? So to answer the straightforward question, your honor, the district court did not construe that term. The reason, your honor, that the district court did not construe that term, both sides, as is common in cases like this, both sides exchange proposed terms for proposed meanings for a variety of different terms. Fresenius did that. Fresenius's proposed claim construction for this term incorporated the same limitation that they argued at trial and that they're arguing here, which is that selected has to mean a value and only a value. Fresenius proposed that construction and then did not ask the district court to construe it. The district court had a limit, as many district courts do, on the number of terms that can be construed. And as a result of that, there was no claim construction done by the district court on that term, right? Not because the district court refused to or because it didn't make the cut list. Because the district court came back after Markman, your honor, and said, are there any other claim construction disputes? If you want a meaning that differs from the plain and ordinary meaning, please be heard on it. And Fresenius, at that time, given a second opportunity to present that argument, chose not to do so. So it begs the question, where are we therefore left? I guess is that your position, as far as I can tell, we're left with no claim construction on that term. So why isn't Fresenius free to discuss and have experts deal with that term? Are you suggesting that by withdrawing their claim construction, they essentially, it was a concession, that your claim construction and not their claim construction was one that could be posited to the jury? Yes, your honor. We're saying that they waived by proposing that the court limit the term selected to mean a value and only a value, as opposed to what all the intrinsic evidence suggests, which is that this is a range of gravity and pressure, negative gravity pressure or vacuum. That they waived their opportunity to get that construction, having had two opportunities from the district court to propose that construction and to argue it and to support it. But there was no construction. There was no construction. So you were free to argue whatever construction you thought was correct. And they were free to argue whatever construction they thought was correct. No, are you suggesting the withdrawal itself precludes them from arguing the content of what it is they withdrew? We're suggesting at least, your honor, that you can't propose a construction, withdraw it, and then argue that same construction to the jury. They twice had an opportunity to have the court rule as a matter of law that that was the proper way to interpret the claim. If the court never ruled on that same construction, then why aren't they free to argue to the jury their view of what that term means? In our view, your honor, they're not And the jury's verdict can't be supported by a claim interpretation, whereas here, it is completely contrary to the evidence of record. So you can't argue to the jury, even if you allow Fresenius to make an argument to the jury that it found wanting enough to two times decide not to make to the district court. You can't then allow them to argue that to the jury in contravention of all of the intrinsic evidence from the patent that demonstrates that selected means a range of pressures. Indeed, their own expert, Dr. Santiago, when he was asked the question, did Fresenius select a range, the very term that's in the claim, did they select the range of negative 150 millibars to negative 200 millibars? He said yes. Wero, can you give us the transcript site for that? I know Dr. Santiago's testimony is like 155. Yes, your honor. If you take a look at A15325, that's the transcript 1847 lines 11 through 14, you'll see that Dr. Santiago testified to that effect. If you also take a look at A15324, that is Dr. Santiago answering the following question. He was asked, did you see anywhere in the 823 patent where Mr. Kamen talked about setting the emulated gravity within a particular range? He answers yes. So in the 823 patent, Mr. Kamen has a range of gravity, or he gives us an example. Negative 0.6 psi to negative 1 psi, correct? And Dr. Santiago answers yes. Yes, he gives us that range. That's right. So when he was asked, even Dr. Santiago conceded that the patent teaches a range. Dr. Santiago, who admitted that the home choice device that Baxter makes practices claim one of the 823 patent, it also indisputably operates using a range of vacuum pressures. So I think to circle back, Your Honor, to the concern that Your Honor and Your Honor have expressed, they're not free to argue a claim construction and have it support a jury verdict here on appeal when that claim construction is at odds with the intrinsic record. Let me see if I understand this. So you're arguing that Prenisius conceded to Baxter's definition. Is that what you're arguing? I don't want to put it too far, Your Honor. What we are saying is Fresenius conceded, or Fresenius passed two times on the opportunity to argue to the district court that selected ought to be limited to a single value and only a single value. Just to make sure, you're not saying that they conceded to Baxter's definition. No, there was never an agreement between the parties, if this is what Your Honor is asking. There was never an agreement between the parties or a stipulation that the district court adopted that said everyone agrees that this is what selected means. If that's Your Honor's question. And you raised this to the judge? Did you just raise this to the judge during the trial? At trial, Your Honor, we filed a motion for judgment as a matter of law. Sort of out of the ordinary course where people do that at the end of their presentation of their evidence. We filed a motion for judgment as a matter of law because Fresenius was presenting only claim construction arguments to the jury. And in every instance, in our view and what we presented to the district court, as to selected, it was either an argument that was absolutely at variance with both the intrinsic record and the testimony of their expert. Or in the case of the claim construction issues surrounding the term to operate, it was claim construction arguments that Fresenius had presented to the district court in support of its limited preferred embodiment incorporating interpretation that the district court had specifically considered and that the district court specifically rejected in her opinions. And Fresenius was nevertheless allowed to argue those bases to the jury. And it's our view here on appeal that improper claim constructions can never be the substantial evidence that this court looks to support a jury verdict. As to, Your Honor, the earlier term. You're running out of time. And I wanted to hear some argument with respect to the first point involving the piston and its operation. Yes, Your Honor. Why wouldn't a reasonable person conclude that the piston operates with quotation marks around the word, operates the pump? I mean, it appears to me that the jury was presented with expert testimony, effectively arguing both sides of the argument. That constitutes substantial evidence once the jury decides what way. We respectfully disagree with that, Your Honor. I think there are two signal places for this court to look to. A2582, Fresenius argued in Markman to the district court that the piston controls the rate and direction of travel. Fresenius was trying to incorporate this piston into the claim construction so that they would not infringe. The district court carefully considered that argument and, in a 26-page Markman order, rejected that effort, as well as all of Fresenius's other claim construction efforts. Fresenius, even in that same Markman brief, Your Honor, admits that the word, operate, does not mean control the rate and direction of travel. They presented that to the district court. The district court shot it down in an opinion that's not on appeal here. Fresenius, in its own Markman brief, says the plain and ordinary meaning of the word, operate, means to cause to function. So the question is, what causes that diaphragm to function? What causes it to move? All of the documentary evidence says that it's vacuum. I'll read the court a couple of- Well, OK, but can you include it in that? And it's not Thomas, even though that's the name listed. I think it may be Conrad. 14991, there's an expert testimony, and he's asked, is the vacuum losing the membrane? And the answer is, not at all. I'll address those, too, Your Honor. With respect to the documentary evidence, numerous documents, 21698, 21697, 24376, all go to this point. And I'll quote from 21697. The vacuum, or negative pressure, applied to the pump chamber will pull back the cassette film on the disposable as fast as possible to remove fluid from the patient. So we know that the vacuum is doing it. And we know from Dr. Santiago, Fresenius' expert, that the piston cannot pull on that film. It can't do it. That's at A15277. Go ahead, Your Honor. There's testimony. I mean, I understand there's probably testimony on your side, too, but you've got to worry about the testimony on the other side. It seems to me, there's another statement by the expert, what moves the membrane in and out? And the answer is, the piston moves the membrane. So I guess I think it would be more worthwhile for you to address the testimony that seems, in my view, to go the other way. So I think you're referring to Mr. Folden's testimony. He was not their expert. He was a layperson that testified about their product. The district court, I would note, in her J-Mall order, says that the only evidence that supported the jury's verdict was expert testimony. So it's clear from the district court's opinion she didn't think much of Mr. Folden's testimony. I think the reason why is that Mr. Folden says, in the quote that's in the red brief at the bottom of page 33, this is at A14991. He says, they have to be together for this to work. The they, the two things that have to be together, are the piston and the vacuum. The vacuum, as explained repeatedly in Presenius's documents, Your Honor, is what pulls that membrane back and draws fluid out of the patient's peritoneum. You've used up all your rebuttal. We'll give you two additional minutes, and then we'll add another two or three minutes to Mr. Brooks' time to even it out. Thank you, Your Honor. Thank you. May it please the court, Juanita Brooks on behalf of the appellees for Presenius Medical Care. I would like to address Your Honor's first point, emulating a selected gravity flow, since you had so many questions on that. First of all, it is accurate that both parties actually originally proffered a plain construction on that. The court has chamber's rules that only 10 terms can be construed. So the parties exchange their terms. They decide which ones, based on that, should be construed and withdraw the rest. That's exactly what happened here. So there was no construction of what it means to emulate a selected gravity flow. However, at trial, all witnesses, including appellant's witness, agreed what it meant. This is the testimony of Dr. Durgan, the expert for appellant at 15247. Dr. Durgan, Mr. Callahan's asking the question, going back to the language of the claim, Dr. Durgan, what does it mean to emulate a selected gravity flow condition? And his answer was, selected means we are going to pre-select the amount of gravity that we are going to apply, or the amount of head height we are going to apply. And this is my reading Dr. Durgan's testimony to Dr. Santiago. Dr. Santiago is then asked by me, do you agree with Dr. Durgan? His answer is yes. Then Mr. Kamen had done a demonstration earlier for the jury where he had these large pressure gauges, and he had bags of solution. And he showed how there was a one-to-one correspondence between where the solution bag was and what pressure was. And so it's what's called head height. So if you have 150 centimeter of head height, it's 150 millibars of pressure. And so then I asked Dr. Santiago, and Mr. Kamen actually did a demonstration here in this court where he held up the bags and the tubing came down, the bags of liquid, and he put a pressure meter at the end of the tube. Do you recall that? I do. And then I asked him whether he believed that that was an accurate demonstration of what it means to select a gravity flow. And his answer was yes. And this is at 15248. He very clearly showed the equivalence between a certain head height and a certain pressure. Then what happened is Dr. Sturgeon on his initial testimony said, and that pressure, I looked at the diagnostic screen on the Liberty Cycler, and that pressure was minus 0.22. Occasionally 0.21, occasionally 2.3, occasionally 2.1, occasionally 2.3, but almost all 2.2. The problem was this. Dr. Santiago had actually made a videotape of the Liberty functioning and the diagnostic screen and what Dr. Santiago showed at 15256 is that it actually oscillated from 2.1 all the way up to 2.9 and back down again. And that that in no way corresponded to a selected gravity flow condition because otherwise what you would then have is the bag, the saline fluid bag, literally moving up and down, which is obviously not what happens in this sort of circumstance. And so the testimony, the jury was certainly free to discredit Dr. Durgan at that point since he had no video of his observations and Dr. Santiago did. There was no claim construction issue. Everyone agreed what it meant to emulate a selected gravity flow. What now plaintiffs wishes, they had asked for a claim construction different or asked for any claim construction. They didn't. We were free to argue what we did. The jury found Fresenius's way. The jury verdict is to be given deference. The court denied this very argument at Jane Wall. And unless your honor has any more questions on that, I would move to the to operate. Okay, and on operate, obviously I presume you're going to cover whether or not the vacuum necessary. Yes, your honor. And so to operate, to operate the appellate argued successfully for the court to give it ordinary meaning. And so what the court said in the court's Markman order is the claim language proceeding to operate and following to operate, which is proceeding applying fluid pressure to the diaphragm and then following to move dialysis solution either from the peritoneal cavity or into the peritoneal cavity, clearly explains how the operation occurs and what it accomplishes. And so then no less than three witnesses at the trial, Mr. Folden that your honor referred to, Dr. Lips who has a PhD in chemical engineering from MIT and is the CEO of Fresenius and our expert, Dr. Santiago all testified as follows. Dr. Santiago at 15, 223, 224. The vacuum's only purpose is to keep the piston head against the membrane at all times. Mr. Folden at 14, 990, the same thing. Dr. Lips at 14, 834 and 835, the same thing. So then the question became, all right, if the vacuum's only purpose is to keep the membrane against the head of the piston, does that mean the vacuum is operating the pump chamber? We're only talking about the end stroke right now, aren't we? Exactly, Dr. Durden's testimony on direct again now was actually the membrane separates from the piston on end stroke during drain. That was his testimony. He said any other time there is no infringement, but during the drain cycle, during the end stroke of the piston, there's a separation according to Dr. Durden between the membrane and the piston. And therefore the only thing that could move the membrane would be the vacuum and therefore the vacuum was operating the pump chamber. Wasn't there some evidence that although the piston was not connected to the membrane, that the piston also operated in a way to push the membrane down? Actually, your honor, the evidence was that the piston was connected to the membrane and that Dr. Durden was wrong. So Dr. Durden said the piston moved at least three quarters of an inch, thereby getting out of the way of the membrane was his testimony. Dr. Santiago now testifies. He shows through the source code, he shows through his conversation with the source code programmer and his own task that the piston and the membrane never do separate. And therefore Dr. Durden's whole theory as to when it is that the vacuum- So if there's never a vacuum in the cassette, in the chamber, would the piston by itself move the membrane? If there is nothing to attach the membrane to the piston, the answer is no, your honor. However, there is always a vacuum, either in-stroke or out-stroke. There's always a vacuum there. Is it only the vacuum that attaches the piston? Are they physically connected or is it the vacuum? They are physically connected through the vacuum, your honor. Hence why I then got into a discussion with Dr. Durden. What if they were physically connected with glue rather than vacuum? Would you say the glue was operating the pump chamber? And his answer was no. I would say the piston was operating the pump chamber. And so therefore, the fact that they're physically connected via vacuum versus glue versus Velcro doesn't change the fact that it is still the piston that is operating the pump chamber. And that is what Dr. Santiago testified unequivocally throughout his testimony, backed it up with actual tests that he ran and showed the jury. Then what happened is Dr. Durden returns to the witness stand and now he does a flip-flop. Now he says, okay, maybe the piston doesn't get out of the way. It acts as a brake. And he gave an analogy to the jury. He says, for example, if a car is speeding downhill because of gravity, I can both get out of the way of that car and brake it with my hand at the same time. At which point there was actually laughter in the courtroom, which is not reflected on the record. In the Liberty Cycler, does a piston just operate in the in-stroke and out-stroke? Does it also operate side to side in any way? No, Your Honor. It simply goes in and out, up and down. And by doing that, what it does is there is a membrane and that's what's called the pump chamber where the dialysate fluid goes through. And the piston is the device that is moving that membrane such that the fluid can go through. And what Dr. Santiago testified unequivocally in his expert opinion is that it was only the piston that operated the pump chamber, not the vacuum. The vacuum's sole role was to adhere the membrane to the vacuum and nothing more than that. The equivalent is Velcro or glue. Wait, you didn't, you misspoke. What the function of the vacuum was to adhere the membrane to the piston. The piston. I'm sorry, Your Honor, if I misspoke. And so I don't know if Your Honors have any more questions. I can give you citation after citation where the witnesses all said that it was the piston that operated the pump chamber and not the vacuum. There was a couple of mentions by counsel I would like to clear up. Going back to the emulating and selective gravity flow, counsel mentioned that Dr. Santiago admitted that there was within the patent a discussed range of pressures. And as we point out on page 43 of our red brief, that isn't referring to the vacuum in the pump chamber. That's referring to some air tanks that are inside of the cycler that have nothing to do with the issue here as to whether or not it's the vacuum versus the piston that's operating the pump chamber. And that's at page 43 of our red brief. Unless the court has any other questions, I would cede my time. I'm happy to address whatever the court would like. I think we're fine, thank you. Thank you very much. Your Honor, on the issue of operates, there is no evidence in the record from Presennian's witnesses or anyone else saying that the piston operates the pump chamber.  The piston controls the rate and direction of the pump chamber. That is the claim construction argument that Presennius tried to get, but was properly rejected by the district court. The evidence is that without vacuum, I think Your Honor asked what happens without vacuum. Presennius did a test. It's in the record at A21556. What happens when Presennius turns off the vacuum? What happens when they remove the fluid pressure? It doesn't work. Without vacuum, this is a quote from the document, the cycler stopped pumping, even though the pistons were still moving. So the question is, what is causing that membrane to move? It's not the piston. Dr. Santiago said, the piston's not pulling the film, and yet the film is moving in that direction. Why? Because of vacuum, because of the application of the fluid pressure required by the claims. On the in-stroke. On the in-stroke, Your Honor, that's all that this is about is on the in-stroke, because the claims say, either using fluid pressure to push or using fluid pressure to pull. They use a piston to push, but every single piece of evidence, including that from Dr. Santiago, is that the piston simply cannot pull. It's not capable of pulling. It can't pull a piece of film in this direction. What pulls, according to Presennius' own documents, this is the documentary evidence that in our view, Your Honor, the jury was not free to disregard. The vacuum applied pulls back the cassette film as fast as possible to remove fluid from the patient. Unless Your Honors have any other questions, on behalf of DECA and Ms. Toohey, and myself and Baxter, we thank Your Honors for your time this morning. We thank both counsel. The case is submitted.